**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-7082

ANTHONY WAYNE MANGUM,

Petitioner - Appellant,

v.

WARDEN S. HALLEMBAEK,

Respondent - Appellee,

and

UNITED STATES OF AMERICA; BUREAU OF PRISONS,

Respondents.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (5:13-hc-02227-FL)

Argued: September 25, 2018                    Decided: December 12, 2018

Before GREGORY, Chief Judge, WYNN, and HARRIS, Circuit Judges.

Reversed and remanded with instructions by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Wynn and Judge Harris joined.

**ARGUED:** Amanda Lineberry, Kendall Burchard, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Michael Bredenburg, BUREAU OF PRISONS, Butner, North Carolina, for Appellee. **ON BRIEF:** Stephen L.

Braga, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Robert J. Higdon, United States Attorney, Joshua Royster, Chief, Civil Division, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————————

GREGORY, Chief Judge:

Appellant Anthony Wayne Mangum appeals the district court's denial of his motion to compel the federal Bureau of Prisons ("BOP") to comply with this Court's mandate in *Mangum v. Hallembaek*, 824 F.3d 98 (4th Cir. 2016). In that case, Mangum had appealed the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging his federal sentence. Specifically, Mangum's petition challenged the refusal of the BOP to designate *nunc pro tunc* a state facility for service of his federal sentence under 18 U.S.C. § 3621(b). *See Mangum*, 824 F.3d at 99. This designation would have effectively run Mangum's federal and state sentences concurrently rather than consecutively, allowing him to credit the time he spent in state prison serving his state sentence toward the previously imposed federal sentence that he had not yet served.

This Court agreed with Mangum and held that the BOP abused its discretion in denying his request for *nunc pro tunc* designation under 18 U.S.C. § 3621(b). We therefore vacated in part the district court's judgment and instructed the court on remand to return the matter to the BOP so that the agency could consider Mangum's request again, this time in a manner consistent with the views expressed in this Court's opinion. *See Mangum*, 824 F.3d at 103. On remand, the BOP denied Mangum's request for a second time in a decision that contradicts this Court's mandate in *Mangum*. Because the BOP failed to comply with our mandate, we reverse the district court's denial of Mangum's motion to compel compliance and remand this matter once again. The district

3

court on remand shall enter an order directing the BOP to reconsider Mangum's request for *nunc pro tunc* designation in light of this opinion.

I.

A.

In February 2006, Mangum was indicted for conspiracy to distribute cocaine base in the Middle District of North Carolina. *Mangum*, 824 F.3d at 99. A few months later, in June 2006, Oklahoma state authorities arrested Mangum and charged him with felony assault and battery with a dangerous weapon, misdemeanor possession of a fictitious driver's license, misdemeanor resisting an officer, and misdemeanor obstructing an officer. *Id.* In August, a federal magistrate judge requested that Oklahoma transfer Mangum to federal custody for his North Carolina proceedings. *Id.* at 100. Mangum ultimately pleaded guilty to conspiracy to distribute cocaine base and was sentenced to 262 months' imprisonment and a five-year term of supervised release. *Id.* During sentencing, the district court did not state whether the federal sentence was to be served concurrently with or consecutive to any other sentence of imprisonment that might result if Mangum were convicted of other offenses in a separate proceeding. *Id.*

After the federal proceedings, Mangum was returned to Oklahoma custody in October 2007. He pleaded guilty to the four state charges and was sentenced concurrently to terms of ten years on count one, seven years on count two, and one year each for counts three and four. *Id.* The state court specifically ordered that the state sentences run concurrently with the previously imposed federal sentence. *Id.*

4

Mangum remained in Oklahoma custody while serving his state sentences. He was paroled to a federal detainer on January 13, 2011, and the BOP, in preparing a sentence computation for Mangum, determined that his service of the federal sentence began on this date. *Id.*

On January 3, 2013, Mangum requested that the BOP consider whether to designate *nunc pro tunc* the Oklahoma prison where he served his state sentence as the place for service of his federal sentence under 18 U.S.C. § 3621(b).[1] *Mangum*, 824 F.3d at 100. The fourth statutory factor the BOP considers in this analysis is "any statement by the court that imposed the sentence." 18 U.S.C. § 3621(b)(4). The BOP thus attempted to contact Mangum's federal sentencing court to inquire whether the court intended to treat the federal sentence as concurrent with or consecutive to the

---

[1] Section 3621(b) provides in relevant part:

The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . that the Bureau determines to be appropriate and suitable, considering—

  (1) the resources of the facility contemplated;
  (2) the nature and circumstances of the offense;
  (3) the history and characteristics of the prisoner;
  (4) any statement by the court that imposed the sentence—
      (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
      (B) recommending a type of penal or correctional facility as appropriate; and
  (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

subsequently imposed state sentence. *Mangum*, 824 F.3d at 100. The court never responded to this inquiry, however, and the BOP went on to deny Mangum's *nunc pro tunc* request after considering the other statutory factors. *Id.* at 100–01. In declining to grant this request, the BOP invoked the fourth factor and reasoned that "the federal Judgment was silent on whether your sentence should run consecutively or concurrently to any other sentence. Pursuant to Title 18 U.S.C. § 3584(a), 'Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.'" *Id.* at 101 (quoting 18 U.S.C. § 3584(a)).

The BOP's refusal to grant *nunc pro tunc* relief, along with its sentencing computation, "effectively determined that the previously imposed federal sentence would be served consecutively to the later imposed state sentence," even though "the clearly expressed intent of the state sentencing court [was] that its sentence be served concurrently with the federal sentence." *Id.* Because of the BOP's decision, Mangum's release date would be on or about January 14, 2030, rather than June 15, 2025.

On October 24, 2013, Mangum filed a petition for a writ of habeas corpus in the Eastern District of North Carolina, seeking credit against his federal sentence for the time he spent serving his state sentence from June 14, 2006, to January 13, 2011. *Id.* The district court granted the warden's motion for summary judgment, and Mangum appealed.

On May 25, 2016, this Court vacated in part the district court's judgment because it had "overlooked a two-pronged flaw in the BOP's exercise of its broad discretion" in denying Mangum's requested *nunc pro tunc* designation of the state facility. *Id.* at 99.

6

First, this Court held that the BOP misapplied 18 U.S.C. § 3584(a) in concluding that the federal sentencing court's silence gave rise to a statutory presumption that Mangum's federal sentence should be deemed to run consecutively to the subsequently imposed state sentence. *See Mangum*, 824 F.3d at 101–02. Second, this Court determined that the BOP erred in soliciting the federal court's sentencing views in the first place. *Id.* at 102–03. We explained that, when Mangum was sentenced in North Carolina federal court in May 2007, "a federal district judge in this circuit was *powerless* to impose a federal sentence to be served consecutively to a state sentence that had not yet been imposed." *Id.* at 102; *see also United States v. Smith*, 472 F.3d 222, 225 (4th Cir. 2006) ("The plain language of [§ 3584(a)] does not grant a district court authority to order that its sentence run consecutively to a future sentence."), *abrogated in part by Setser v. United States*, 566 U.S. 231, 233 (2012) (holding that a district court "has authority to order that the federal sentence be consecutive to an anticipated state sentence that has not yet been imposed"), *as stated in United States v. Obey*, 790 F.3d 545, 549 (4th Cir. 2015). Though acknowledging that *Setser* subsequently changed the law, this Court made clear that

> any definition of an arbitrary and capricious determination by an administrative agency such as the BOP would include within it the agency's invocation of a presumed intention on the part of a federal sentencing judge to do that which he was powerless to do under binding circuit precedent at the time he imposed a sentence. In this case, one might reasonably expect the BOP to exercise its discretion to weigh heavily what the state judge *did say* rather than what the federal judge *did not and could not say*.

7

*Mangum*, 824 F.3d at 103 (footnote omitted). In vacating and remanding this part of the district court's judgment, we gave the following instructions:

> Upon remand, the district court shall return this matter to the BOP so that the agency may give plenary consideration to Mangum's request for *nunc pro tunc* designation of the Oklahoma state facility as the place for service of his federal sentence. In considering the request, the BOP shall invoke no presumption under 18 U.S.C. § 3584(a) and shall fully evaluate all relevant factors under 18 U.S.C. § 3621(b) in a fashion consistent with the views expressed in this opinion.

*Id.*

## B.

On July 28, 2016, the district court returned the matter to the BOP "so that it [could] give plenary consideration to [Mangum's] request for *nunc pro tunc* designation of the Oklahoma state facility as the place for service of his federal sentence as set forth above and in the Fourth Circuit's May 25, 2016 opinion." J.A. 99.

On October 17, 2016, the BOP's Designation and Sentence Computation Center reconsidered Mangum's request for *nunc pro tunc* designation under the statutory factors set forth in 18 U.S.C. § 3621(b). J.A. 106. In considering the fourth factor, the BOP again erroneously invoked the statutory presumption in 18 U.S.C. § 3584(a) in favor of consecutive sentences. *See Mangum*, 824 F.3d at 103. The BOP also contacted the federal sentencing court once more "for a statement concerning its position on a retroactive designation." J.A. 106; S.J.A. 157–58. In a letter dated October 14, 2016, the federal court began by acknowledging that Mangum had no state sentence at the time the court imposed the federal sentence. Mangum had yet to plead guilty to the state charges, and as the federal court explained, it "had no information whether the State of Oklahoma

8

would continue with those charges or not in view of the sentence being imposed in this Court." S.J.A. 159. The federal court nevertheless indicated that, had Mangum already pleaded guilty to the state charges and received the ten-year state sentence at the time of federal sentencing, it "would not have ordered that the sentences run concurrently since the conduct in Oklahoma was not actually increasing his sentence in this Court." J.A. 106; S.J.A. 159. Relying on this statement, the BOP denied Mangum's request for *nunc pro tunc* relief for a second time. J.A. 106.

On December 15, 2016, Mangum filed a motion to compel performance in the district court, arguing that the BOP had refused to obey the orders from the district court and this Court. J.A. 100–05. The BOP responded on December 29, 2016. J.A. 111–15. After acknowledging that its original review "was not consistent with the views expressed in the Fourth Circuit's opinion in this case," the BOP explained that it had "conducted another review of [Mangum's] request" on December 23, 2016, "this time consistent with the Fourth Circuit's directive." J.A. 111–12.

On August 4, 2017, the district court denied Mangum's motion to compel. J.A. 144–49. Citing a "Factors Under 18 USC 3621(b) Worksheet" that the BOP had completed as part of its second review, the district court held that the BOP properly evaluated each of the relevant statutory factors in denying Mangum's *nunc pro tunc* request. Addressing the fourth factor, the district court noted that the BOP contacted "the sentencing court, which did not express an opinion at sentencing, . . . to obtain an opinion regarding retroactive designation." J.A. 148. The district court then reproduced the sentencing court's statement that it would not have ordered that the sentences run

9

concurrently. The district court in its review did not mention that the BOP included the following in the "Comments" section at the end of the Factors Worksheet:

> It appears that dicta in the opinion of the Fourth Circuit Court of Appeals in *Mangum v. Hallembaek*, 824 F.3d 98 (4th Cir. 2016), may suggest that under the unique circumstances of the case, the Bureau of Prisons could consider the intent of the state court judge in exercising its discretion. The Bureau of Prisons has done so in this case, and accordingly used its discretion consistent with its statutory authority under 18 U.S.C. [§] 3621(b) and the Fourth Circuit's opinion with respect to Mangum's request for *nunc pro tunc* designation.

In closing, the district court stated that, "[a]s directed by the Fourth Circuit, the BOP invoked no presumption under 18 U.S.C. § 3584(a)" and "evaluated all of the relevant factors under § 3621(b) in a manner that is consistent with the Fourth Circuit's opinion." J.A. 149. According to the district court, the BOP's "exercise of its broad discretion here was not arbitrary." J.A. 149.

This appeal followed. The issue this Court identified for briefing is "whether the district court erred in denying the motion to compel compliance with *Mangum v. Hallembaek*, 824 F.3d 98 (4th Cir. 2016)." Briefing Order, Docket No. 18.

II.

"We review *de novo* whether a post-mandate judgment of the district court 'contravenes the mandate rule, or whether the mandate has been scrupulously and fully carried out.'" *Doe v. Chao*, 511 F.3d 461, 464 (4th Cir. 2007) (quoting *S. Atl. Ltd. P'ship*

*of Tenn., LP v. Riese*, 356 F.3d 576, 583 (4th Cir. 2004)).[2] We have jurisdiction under 28 U.S.C. § 2253.

## III.

## A.

"The force of our prior mandate is governed by well-established principles." *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 414 (4th Cir. 2005) (stating that the mandate rule "is a more powerful version of the law of the case doctrine"). "In general, once a case has been decided on appeal and a mandate issued, the lower court may not deviate from that mandate but is required to give full effect to its execution." *Id.*; *see also* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478.3, at 733 (2d ed. 2002) (explaining that the mandate rule is based on "the principle that an inferior tribunal is bound to honor the mandate of a superior court within a single judicial system"). A district court may not deviate from the mandate rule "except in rare circumstances." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993). The respondents do not contend that such rare circumstances are present here. "Our review, therefore, is limited to consideration of the scope of our mandate and a

---

[2] Relying primarily on *United States v. Hall*, 664 F.3d 456 (4th Cir. 2012), the respondents argue that the question whether the district court erred in concluding that the BOP did not abuse its discretion is a question of fact that we review only for clear error. Our precedent makes clear, however, that this Court reviews *de novo* whether our mandate "has been scrupulously and fully carried out." *Doe*, 511 F.3d at 464 (citation and internal quotation marks omitted); *cf. Hall*, 664 F.3d at 465–66 (reviewing for clear error the district court's factual findings based on witness testimony and related credibility determinations).

11

determination of whether the district court faithfully executed it[.]" *Invention Submission Corp.*, 413 F.3d at 415.

In this case, we must determine whether the district court faithfully executed our mandate when it denied Mangum's motion to compel compliance with our previous opinion. The respondents note that this Court has never held that the mandate rule applies to administrative agencies like the BOP, but the "general principle is easily recognized," and circuit case law accords with this conclusion. Wright, Miller & Cooper, *Federal Practice and Procedure* § 4478.3, at 760; *see also Scott v. Mason Coal Co.*, 289 F.3d 263, 267 (4th Cir. 2002) (stating in dicta that the "rule applies with equal authority and weight to the [Benefits Review] Board and to the ALJ as administrative agencies"); *Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 98 (4th Cir. 2015) (noting *Mason Coal*'s dicta and "presum[ing] without deciding that the Social Security Administration is an agency to which the mandate rule applies").[3]

## B.

Mangum argues that on remand the district court erred in failing to compel the BOP to evaluate the relevant factors under 18 U.S.C. § 3621(b) in a manner consistent

---

[3] Several of our sister circuits have likewise concluded that the mandate rule applies to administrative agencies. *See, e.g.*, *Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir. 2002) (explaining that "the doctrine and the mandate rule apply to judicial review of administrative decisions"); *Youghiogheny & Ohio Coal Co. v. Milliken*, 200 F.3d 942, 950 (6th Cir. 1999) ("Administrative agencies and ALJs, of course, are not free to ignore this court's mandates."); *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) (same).

12

with our mandate. *See Mangum*, 824 F.3d at 102–03. We agree with Mangum, and reverse the district court's denial of his motion to compel compliance.

In *Mangum*, this Court reversed the district court's judgment because it had "overlooked a two-pronged flaw in the BOP's exercise of its broad discretion" under 18 U.S.C. § 3621(b). 824 F.3d at 99. The second prong of that flaw was the BOP's decision to invoke the federal sentencing court's views on Mangum's *nunc pro tunc* request when "a federal district judge in this circuit was *powerless* to impose a federal sentence to be served consecutively to a state sentence that had not yet been imposed" at the time Mangum was sentenced in federal court in May 2007.[4] *Id.* at 102. This Court deemed arbitrary and capricious the BOP's invocation of the federal sentencing judge's "presumed intention . . . to do that which he was powerless to do under binding circuit precedent at the time he imposed a sentence." *Id.* at 103. Because the federal sentencing court's views were legally irrelevant, and because it was undisputed that the state court clearly intended for the state sentence to run concurrently with the federal sentence, we stated that "one might reasonably expect the BOP to exercise its discretion to weigh heavily what the state judge *did say* rather than what the federal judge *did not and could not say*." *Id.* We then ordered that the BOP on remand "shall fully evaluate all relevant

---

[4] The first prong of the flaw was the BOP's reliance on the statutory presumption in favor of consecutive sentences as a basis for denying Mangum's *nunc pro tunc* request. *See Mangum*, 824 F.3d at 101–02. Although the BOP on remand initially invoked this presumption again, the agency conducted another review of Mangum's request to remedy that error.

13

factors under 18 U.S.C. § 3621(b) in a fashion consistent with the views expressed in this opinion." *Id.*

The BOP disregarded these instructions on remand. In a letter sent less than three months after this Court's decision issued, the BOP again asked the federal sentencing court whether it would have ordered that Mangum serve his federal sentence concurrently with or consecutive to his state sentence. The BOP's letter clearly indicates that its *nunc pro tunc* determination would ultimately turn on the federal sentencing court's response.[5] After the federal court indicated that it would not have ordered that the sentences run concurrently "since the conduct in Oklahoma was not actually increasing his [federal] sentence," the BOP recorded this response in its Factors Worksheet as a basis for denying Mangum's *nunc pro tunc* request, even though Mangum had not been convicted of the Oklahoma offenses at the time of federal sentencing and thus his conduct in Oklahoma could not have increased his federal sentence. By contrast, the BOP gave the state court's sentencing views only token consideration. It characterized as "dicta" this Court's instruction that the BOP consider the state court's views and indicated that it "has done so in this case" without elaborating on this assertion or otherwise engaging with the state court's clear preference for concurrent sentences. The district court, overlooking the

---

[5] *See* S.J.A. 158 ("It is the Bureau's preference that the federal sentencing Court state its position with respect to a retroactive designation. . . . Should the Court indicate the sentence is to run concurrent with the state term, the Bureau will commence the sentence in the above judgment on May 16, 2007, the date of imposition, which will result in Mr. Mangum's release from custody on or about June 15, 2025. Should the Court indicate the term is to run consecutive to the state term, [Mangum] will continue to a current projected release date of January 14, 2030.").

14

flaws in the BOP's analysis, concluded that the agency had "evaluated all of the relevant factors . . . in a manner that is consistent with the Fourth Circuit's opinion." J.A. 149.

The BOP's actions on remand were directly contrary to this Court's holding that the federal sentencing court's views on Mangum's *nunc pro tunc* request were legally irrelevant, and that the BOP thus could give no weight to these views and must instead "weigh heavily" the state court's statement that the sentences should run concurrently. *See Mangum*, 824 F.3d at 103. Rather than comply with this directive, the BOP considered each court's position on sentencing and determined that the federal court's views were entitled to more weight than the state court's statement. *See, e.g.*, Resp. Br. 10 (asserting that "the BOP . . . took care to note that, in reaching its designation decision, it had reflected on the state court's wishes" but "[t]hat wish was outweighed by other considerations, including that . . . the federal sentencing judge would not have ordered its sentence to be concurrent with the unrelated state sentence"); *id.* at 15 (explaining that "the clear intent of Mangum's state court sentencing judge was that Mangum's state sentence should run concurrently with his federal sentence, but the federal sentencing court judge indicated that he would not have ordered the sentences to run concurrently").

Under our mandate, however, the state court's statement was entitled *as a matter of law* to receive more weight than the federal court's views, which could be given no

weight under binding circuit precedent at the time.[6]  The BOP thus could not have

properly concluded that the state court's clear preference for concurrent sentences was

outweighed by any statement from the federal sentencing court.  And yet that is precisely

what it did.  The BOP's weighing of the federal court's sentencing views and its

perfunctory consideration of the state court's statement—an assertion that it "has done so

in this case" with no accompanying reasoning to explain why it was declining to honor

the state court's wishes—mark an improper deviation from our mandate and require that

we reverse the district court's denial of Mangum's motion.  *See Invention Submission*

*Corp.*, 413 F.3d at 414 (stating that "the lower court may not deviate from th[e] mandate

but is required to give full effect to its execution"); *Bell*, 5 F.3d at 66 (explaining that a

district court must "implement both the letter and spirit of the . . . mandate, taking into

account [our] opinion and the circumstances it embraces" (alterations in original)

(citation and internal quotation marks omitted)).

It is true, as the respondents contend, that the BOP is not bound by the state

court's sentencing preference in the *nunc pro tunc* analysis.  *See Barden v. Keohane*, 921

F.2d 476, 478 n.4 (3d Cir. 1990).  But as we have explained, the state court's statement

---

[6] We recognize, as noted above, that our precedent subsequently was abrogated by *Setser v. United States*, 566 U.S. 231 (2012), which makes a federal court's views on this matter highly relevant.  In *Setser*, the Supreme Court held that a federal sentencing court has discretion to determine whether its sentence will run concurrently with an anticipated (but not yet imposed) state sentence, *id.* at 236–37, and that once it exercises that discretion, the BOP is "not free to use its 'place of imprisonment' authority [under § 3621(b)] to achieve a different result." *Id.* at 238.  Our mandate in *Mangum*, which we enforce today, was limited to the law as it stood at the time of Mangum's federal sentencing.

that the sentences should run concurrently is entitled to more weight than the BOP gave it, especially because the BOP's Factors Worksheet on its face provides little indication of what factors would justify overriding the state court's preference and denying Mangum's *nunc pro tunc* request once the federal court's views are properly excluded from the analysis.

The respondents' remaining arguments likewise prove unavailing. The respondents contend that Mangum "has mischaracterized the scope of the mandate to include dicta," but this Court's determination that the federal court's sentencing views were legally irrelevant, and that the state court's preference for concurrent sentences was thus entitled to weight in the *nunc pro tunc* analysis, was central to the holding in our prior opinion. *See Mangum*, 824 F.3d at 102 ("The clarity of the BOP's error is made even more plain by [this] second compelling consideration."); *id.* at 103 (explaining that "one might reasonably expect the BOP to exercise its discretion to weigh heavily" the state court's statement because the federal court's views are legally irrelevant and directing the BOP on remand to "fully evaluate all relevant factors . . . in a fashion consistent with the views expressed in this opinion").

Relying heavily on our unpublished decision in *Trowell v. Beeler*, the respondents also argue that the BOP conducted a proper *nunc pro tunc* analysis because it completed the Factors Worksheet and took into account each of the relevant statutory factors before exercising its broad discretion to deny Mangum's request. 135 F. App'x 590, 596 (4th Cir. 2005) (explaining that the "BOP must exercise its own independent judgment, taking into account all applicable factors in § 3621(b), including the views of the sentencing

17

court," when evaluating a request for *nunc pro tunc* designation). Contrary to the respondents' suggestion, however, this case does not involve a routine review of the BOP's exercise of discretion in ruling on a *nunc pro tunc* request. This case instead requires us to define the scope of our mandate and determine whether the BOP, in our *de novo* judgment, "faithfully executed it." *Invention Submission Corp.*, 413 F.3d at 415. We hold that it did not. That the BOP typically enjoys broad discretion in analyzing *nunc pro tunc* requests in the first instance bears little relevance to our analysis.

Finally, the respondents defend the BOP's actions by contending that "one might [] reasonably expect BOP to follow up with the federal sentencing judge" given that § 3621(b) includes as a factor for consideration "any statement by the court that imposed the sentence." 18 U.S.C. § 3621(b)(4). But this argument runs contrary to our conclusion in *Mangum* that any statement by the federal sentencing court here would be legally irrelevant because the court could not have ordered that its sentence run consecutively to a future state sentence under binding circuit precedent at the time. Any suggestion that the BOP may "follow up" with the court thus conflicts with our opinion and mandate.

IV.

For the foregoing reasons, we hold that the BOP failed to comply with this Court's mandate in evaluating Mangum's request for *nunc pro tunc* designation of the Oklahoma state facility as the place for service of his federal sentence. We therefore reverse the district court's denial of Mangum's motion to compel compliance. On remand, the

18

district court shall enter an order directing the BOP to reconsider Mangum's request for *nunc pro tunc* designation in light of this opinion. In reevaluating the request, the BOP shall not invoke the views of the federal sentencing court and shall weigh heavily the state court's desire for concurrent sentences in the course of conducting a full and proper evaluation of all relevant factors under 18 U.S.C. § 3621(b).

*REVERSED AND REMANDED WITH INSTRUCTIONS*